UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JESSE LEWIS,

                Defendant.

Case # 17-CR-28-FPG

DECISION AND ORDER

      On September 19, 2019, Defendant Jesse Lewis pleaded guilty to one count of narcotics conspiracy pursuant to a plea agreement. ECF Nos. 373, 374. On December 12, 2019, the Court sentenced him to a term of imprisonment of 84 months. ECF Nos. 427, 432. On August 19, 2020, the Court denied without prejudice Defendant's *pro se* motion for compassionate release under 18 U.S.C. § 3582(c), concluding that he had failed to exhaust his administrative remedies. ECF No. 503. On January 25, 2021, Defendant filed a renewed motion for compassionate release (ECF No. 513), along with a motion to appoint counsel (ECF No. 514) and a motion for reconsideration of the Court's prior order on compassionate release (ECF No. 512).

      Concerning Defendant's request for appointment of counsel, the Court denies the motion because, as discussed below, his substantive motions lack merit. *See United States v. Piña*, No. 01-CR-619, 2021 WL 364192, at *1 (S.D.N.Y. Feb. 3, 2021) (denying request for appointment of counsel for compassionate release motion, where defendant's "chances of success on his proposed motion . . . are extremely slim" (internal quotation marks omitted)).

      Turning to the motions for compassionate release, "[a] court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Lucas*, No. 15-CR-143, 2020 WL 2059735, at *1 (W.D.N.Y. Apr. 29, 2020) (internal brackets omitted). "Section 3582(c)(1)(A) provides one such statutory exception, often referred to as 'compassionate release.'" *Id.* Under § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if,

1

after "considering the factors set forth in section 3553(a)," the court "finds that . . . extraordinary and compelling reasons warrant such a reduction." A district court's "discretion in this area—as in all sentencing matters—is broad," and courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). Furthermore, "[t]he defendant has the burden to show he is entitled to a sentence reduction." *United States v. Flores*, No. 17-CR-449, 2020 WL 2907549, at *2 (S.D.N.Y. June 3, 2020).

In this case, Defendant justifies his release request based on the combination of (1) his risk of sustaining complications from COVID-19 due to his pre-existing conditions (diabetes, high blood pressure, depression, anxiety, and high cholesterol), and (2) the conditions in prison, which make infection more likely. *See* ECF No. 513 at 2-3, 6-7. Extraordinary and compelling circumstances may exist where "the defendant suffers from a serious physical or medical condition that substantially diminishes his ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." *United States v. Weiskopf*, No. 19-CR-6093, 2020 WL 3248383, at *1 (W.D.N.Y. June 16, 2020) (internal quotation marks and brackets omitted). Consequently, "where a defendant can show *both* a particularized susceptibility *and* a particularized risk of contracting the coronavirus, [the court] may grant motions for compassionate release based upon a defendant's medical conditions." *United States v. White*, No. 18-CR-61, 2020 WL 3442171, at *4 (E.D. Va. June 23, 2020) (emphases added).

However, while Defendant indisputably has pre-existing conditions that place him at a higher risk for developing complications *if* he contracts COVID-19,[1] the Court concludes that he has not shown a particularized risk of contracting the virus at his facility, Victorville USP.

---

[1] The CDC indicates that adults with type 2 diabetes are "at increased risk" of severe illness if infected, while those with high blood pressure "might be at an increased risk" of severe illness. *See People with Certain Medical*

2

According to data from the Bureau of Prisons ("BOP"), there are 1,195 total inmates at Victorville USP, 1,188 inmates have been tested for COVID-19, and 522 have tested positive.[2] That is undoubtedly a concerning rate of infection. But, like much of the country, Victorville's infection rate has ebbed and flowed, and there has been a recent downward trajectory. *See United States v. Schram*, 475 F. Supp. 3d 1168, 1169 (D. Or. 2020) (2 active cases as of June 22, 2020, rising to 50 active cases as of July 30, 2020); *United States v. Snulligan*, No. 99-CR-561, 2020 WL 5702295, at *5 (N.D. Ill. Sept. 24, 2020) (7 inmates and 8 staff members positive as of September 23, 2020); *United States v. Amezcua*, No. 93-CR-5046, 2021 WL 168276, at *6-7 (E.D. Cal. Jan. 19, 2021) (177 inmates and 24 staff members positive as of December 26, 2020, and 108 inmates and 28 staff members positive as of January 12, 2021); *United States v. Reed*, No. 13-CV-787, 2021 WL 631921, at *2 (D.N.J. Feb. 18, 2021) (18 active cases as of February 16, 2021).

The present situation at the facility is less dire than the overall infection rate might suggest: only 10 inmates and 10 staff members are currently positive for the virus; there have been no deaths reported at the facility; and 509 inmates and 67 staff members have recovered. The low and falling number of active cases militates against a finding that Defendant faces a palpable risk of contracting COVID-19. *See, e.g.*, *United States v. Battle*, No. 05-CR-377, 2021 WL 363956, at *2 (S.D.N.Y. Feb. 3, 2021) (no extraordinary and compelling circumstances where facility had a recent outbreak but cases had "declined rapidly in recent weeks" to 29 active cases among 2,723

---

*Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited February 25, 2021).

[2] This data is derived from the BOP's website (https://www.bop.gov/coronavirus/), which was lasted visited on February 25, 2021.

Defendant was originally housed at Atwater USP and then placed "in transit" for a period before arriving at Victorville USP. *See* ECF No. 512 at 1-3; ECF No. 517 at 2 n.1. Much of Defendant's motion for reconsideration is focused on the poor conditions he was in while "in transit," ECF No. 512 at 1, but because he is now at a new facility, the Court declines to consider those conditions in deciding whether Defendant has shown that he is *presently* facing extraordinary and compelling circumstances that justify release.

3

total inmates); *United States v. Suarez*, No. 16-CR-453, 2020 WL 7646888, at *3 (S.D.N.Y. Dec. 23, 2020) (expressing skepticism that defendant could show extraordinary and compelling circumstances, where recent outbreak at facility had subsided from 103 inmate-cases to 20 over three weeks); *accord Reed*, 2021 WL 631921, at *2 (no extraordinary and compelling circumstances with respect to inmate housed at Victorville USP, in part because of the low number of active cases as of February 16, 2021). Likewise, the absence of any inmate or staff deaths suggests that prison officials are "adequately treating those that are infected." *United States v. Slutzkin*, No. 09-CR-60, 2021 WL 77139, at *9 (D. Conn. Jan. 8, 2021); *see also United States v. Knight*, No. 10-CR-128, 2020 WL 5640238, at *5 (W.D.N.Y. Sept. 22, 2020) ("[T]he mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme.").

Significantly, there is reason to believe that the current rate of infection will remain low. It appears that the facility has begun to administer COVID vaccines to inmates, *see* ECF No. 520 at 57; *Reed*, 2021 WL 631921, at *2, and the BOP hopes that this may reduce potential vectors for transmission. *See United States v. Curaba*, No. 14-CR-50065, 2021 WL 616316, at *5 (D.S.D. Feb. 17, 2021) (summarizing BOP guidance on its vaccination program). Though it remains unclear to what degree vaccination from COVID-19 reduces transmission, these efforts undercut any claim that officials are not taking active, significant steps to protect the health and safety of inmates at Victorville. Indeed, Defendant was offered the vaccine, but refused it. ECF No. 520 at 57.

For these reasons—the low number of active cases, the facility's apparent success in treating inmates who contract the virus, and the rollout of the vaccination program—the Court

4

concludes that Defendant has not established an extraordinary and compelling reason justifying release.  Defendant's fears are wholly understandable, but "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Howard*, No. 04-CR-5234, 2020 WL 3513938, at *3 (E.D. Cal. June 29, 2020).  Accordingly, his motions for compassionate release (ECF No. 513) and for reconsideration (ECF No. 512) are denied.

## CONCLUSION

Defendant's Motions for Compassionate Release (ECF No. 513), for Reconsideration (ECF No. 512), and to Appoint Counsel (ECF No. 514) are DENIED.

IT IS SO ORDERED.

Dated: March 1, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court